UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of INDIANA
SOUTH BEND DIVISION

DOUGLAS HOVERMALE,

    Plaintiff,

    v.

NORFOLK SOUTHERN
CORPORATION, et al.,

    Defendants.

Case No. 3:24-CV-326-CCB

### <u>OPINION AND ORDER</u>

Douglas Hovermale sued Norfolk Southern Railway Company and Norfolk

Southern Corporation, alleging workplace harassment, discrimination, and retaliatory

discharge under Title VII, 42 U.S.C. § 2000e *et seq.* The Court now rules on Defendants'

motion for summary judgment.

### BACKGROUND

The following facts are not in dispute unless otherwise noted.[1] Plaintiff Douglas

Hovermale's complaint arises from his employment as a conductor working for

Defendant Norfolk Southern Railway Company ("Norfolk Southern"), a wholly owned

subsidiary of Defendant Norfolk Southern Corporation (ECF 46 ¶¶ 1–5).

---

[1] To dispute a fact, the party opposing summary judgment must identify the fact as disputed and cite to evidence that raises a genuine dispute. N.D. Ind. L. R. 56-1(b)(2)(C); Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, a fact is undisputed if the party either noted it as such, or cited no evidence that raised a genuine dispute.

### 1.   Employment History

Mr. Hovermale was initially hired in 2012, and worked until March 19, 2022, when he was terminated for violating Norfolk Southern's drug-use rules after he tested positive for marijuana. (ECF 52 at 38; 46 ¶¶ 15–20). Mr. Hovermale was re-hired on January 19, 2023, following clearance with Norfolk Southern's health and substance rehabilitation services. (ECF 52 ¶ 52). After working a shift on February 26, 2023, Mr. Hovermale stopped responding to calls to work (ECF 52 ¶¶ 55–58). After a hearing on April 20, 2023, Mr. Hovermale was terminated on May 3. (ECF 52 ¶¶ 90–95).

### 2.   Sexual Harrassment Allegations

On April 13, 2023, Mr. Hovermale sent messages to several supervisors asserting that his absences had been due to sexual harassment. After an investigation, Norfolk Southern concluded that Mr. Hovermale's allegations were "unsubstantiated." (ECF 52 ¶ 86).

The substance of Mr. Hovermale's sexual harassment and discrimination allegations is this: During the summer of 2022, Mr. Hovermale filmed himself engaging in sexual activity with two other individuals, one male and one female (the "Video"). (ECF 52 ¶ 24). Sometime during the period in 2022–23 when Mr. Hovermale was not employed with Norfolk Southern, the Video was acquired and disseminated without his consent. (ECF 52 ¶¶27–28). Mr. Hovermale suspects that the Video was acquired and shared by a clerk who worked at an extended stay hotel that Norfolk Southern employees would often use when on layover. (ECF 52 ¶ 27). It is undisputed that several Norfolk Southern employees viewed the Video. (ECF 52 ¶¶ 30–34). Mr.

2

Hovermale alleges that, after he returned to work in January 2023, he repeatedly overheard crude comments and insults by other Norfolk Southern employees that referenced the Video's content and targeted his bisexual status. (ECF 52 ¶¶ 96–102).

Mr. Hovermale alleges that his supervisors at Norfolk Southern were aware of this harassment and failed to take action. (Count I). He also alleges that he was discriminatorily terminated on account of his bisexuality and/or in retaliation for reporting hostile work environment allegations to Norfolk Southern. (Counts II & III).

## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory,

3

undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## ANALYSIS

### I.    Harassment

Mr. Hovermale alleges that Defendants are liable under Title VII for failing to prevent or remedy workplace harrassment. To make a hostile work environment claim under Title VII, a plaintiff must show: (1) unwelcome harassment; (2) based on a protected characteristic; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) a basis for employer liability. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (citing *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021)).

Here, Mr. Hovermale alleges that he overheard various crude comments targeting his bisexuality. (ECF 55 at 5). The parties debate whether these comments were based on Mr. Hovermale's protected characteristic and also whether they were so severe as to constitute a hostile work environment claim under Title VII. (ECF 45 at 15). But the Court need not address those disputes, because Norfolk Southern cannot be liable as an employer.

To hold an employer liable under Title VII, the mere presence of harassment is not enough. Rather, the plaintiff must show either (1) that a supervisory employee was involved in the harrassment or (2) that the employer was "negligent in either discovering or remedying the harassment." *Williams v. Whitley Mem'l Hosp., Inc.*, No. 3:21-CV-892 JD, 2023 WL 6064933, at *11 (N.D. Ind. Sept. 18, 2023) (*quoting Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018)).

There are no allegations that Mr. Hovermale's supervisors actually engaged in harassment. Thus, he must show that Norfolk Southern was negligent in discovering or remedying the harassment. *See Johnson*, 892 F.3d at 904. When alleging that an employer was negligent in discovering or remedying harassment, "[t]he plaintiff bears the burden of showing that the employer knew of the problem . . . and that the employer did not act reasonably to equalize working conditions once it had knowledge." *Dunn v. Washington Cty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005).

Mr. Hovermale has not shown any direct evidence that his supervisors were aware of the alleged harassment.  Even so, when an employee does not provide direct notice to the employer, courts will occasionally find "constructive notice" when the

5

harassment is so "sufficiently pervasive and obvious" that the employer very likely would have known about it. *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 404 (7th Cir. 2024). Mr. Hovermale argues that Supervisors Wilson and Rooks had "constructive notice" of the Video and related harassing comments due to their "public nature." (ECF 55 at 19).

In support of this, he alleges that he heard some comments in the "office," in the common areas for railroad employees, and over the radio while working on a train. (ECF 45-1). But he does not identify how prevalent these comments were, who made the comments, who else was in the room or on the train, or any other facts suggesting that Supervisors Wilson and Rooks would likely have been aware of the comments. It is disputed whether or not Wilson and Rooks knew about the Video. (ECF 52 ¶¶ 45–46). However, this is irrelevant to whether they knew that plaintiff was *harassed*. Mr. Hovermale presents no evidence that the comments were made in a public manner that would have likely been overheard and understood by Wilson and Rooks. Thus, he does not create a genuine issue of material fact on whether his alleged harassment was "sufficiently obvious" to create constructive notice.

Absent a finding of constructive notice, an employer is not considered on notice of harrassment "unless the employee makes a concerted effort to inform the employer that a problem exists." *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999) (quoting *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999)). Here, it is undisputed that Mr. Hovermale did not report anything to Norfolk Southern until April 17, 2023, fifty days after the last day he worked, and twenty-eight days after Norfolk Southern began

sending him disciplinary letters regarding his missed calls. (ECF 52 ¶¶ 56, 71, 78). Moreover, when Mr. Hovermale made his April 17 report, Supervisor Wilson contacted Norfolk Southern's Equal Opportunity Office ("EEO") the same day. (ECF 52 at 77–80). A formal investigation hearing was initially scheduled for the next day. (*Id.* at 80–81). Beginning four days later, the EEO made multiple attempts to contact Mr. Hovermale. He does not dispute that he either did not pick up these calls or gave nonresponsive answers. (*Id.* at 82). Mr. Hovermale's explanation for this is that he "wasn't gonna get anywhere with them." (ECF 45-1 at 51).

Thus, by his own admission, Mr. Hovermale did not cooperate in the EEO investigation. Even so, the EEO continued to take action, reaching out to his supervisors to inquire into whether they knew about the alleged harassment. (ECF 45-32; 45-33). The EEO also interviewed Supervisor Wilson. (ECF 45-28 at 3). In its investigation summary, the EEO noted that it was unable to conduct an investigation due to the fact that "Hovermale refused to provide information to allow an investigation into the allegations raised." (ECF 45-28 at 3). All available evidence shows that once Mr. Hovermale made an actual complaint to Norfolk Southern, the response was swift and thorough and was only impeded by Mr. Hovermale's own noncompliance.

Mr. Hovermale argues that the investigation was belated, as he had repeatedly referenced the alleged harassment when speaking with his union representative, Mr. Daniel Gibson. (ECF 55 at 5). But Mr. Gibson had no supervisory role or reporting obligations with Norfolk Southern and acted only as a representative for the union, not Norfolk Southern. (ECF 45-20 at 4–6, 13–14). The fact that Hovermale subjectively saw

Gibson as his "go-to guy," (ECF 55 at 2), does not change this fact. *See Graber v. Mad Brewer, Inc.*, 773 F. Supp. 2d 765, 785 (N.D. Ind. 2011) ("What is relevant [to the Title VII analysis] is the perception of the employer, not the view of the employee.") (citing *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 398 (7th Cir. 1998)). Mr. Hovermale provides no evidence that Mr. Gibson notified any Norfolk Southern supervisory employees of his discussions with Mr. Hovermale. Mr. Hovermale's statements to Mr. Gibson cannot create employer knowledge.

Mr. Hovermale also argues that the corporate structure at Norfolk Southern made it difficult for him to know who to contact about his complaints, asserting that he "functionally had no supervisor" and thus "had no idea who to report to." (ECF 55 at 19–20). Yet Mr. Hovermale does not explain why he could not have reached out directly to Norfolk Southern's EEO office. Moreover, it is undisputed that Mr. Hovermale possessed the contacts of several individuals in Norfolk Southern leadership positions, including Terminal Superintendent Wilson, Terminal Manager Zoe Bates, and Senior Road Manager Salko Horic. (ECF 52 at 61, 77). In fact, it was to several of these individuals that he made his April 17, 2023 report. (*Id.* at 77). Lack of contacts cannot explain Mr. Hovermale's delay in reporting harassment. Thus, Mr. Hovermale does not raise any genuine issue of material fact as to whether he was functionally barred from reporting his harassment at an earlier date due to Norfolk Southern's reporting framework.

Mr. Hovermale has not met his burden of showing that Norfolk Southern was negligent in detecting or resolving the alleged harrassment. His Title VII harrassment claims fail. *See Johnson*, 892 F.3d at 904.

## II.   Wrongful Discharge

Mr. Hovermale also alleges that Norfolk Southern violated Title VII by wrongfully terminating him because of his bisexual status. In order to avoid summary judgment on a Title VII discrimination claim, a plaintiff must show evidence that would "permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. In deciding this question, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* Courts may use certain evidentiary tests, such as *McDonnell Douglas*'s burden-shifting approach, to evaluate whether evidence meets this threshold. *See Napier v. Orchard Sch. Found.*, 137 F.4th 884, 891 (7th Cir.) ("*McDonnell Douglas* . . . remains an efficient way to organize, present, and assess evidence in discrimination cases." (internal quotations omitted) (quoting *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022))). The court's use of a specific evaluation method will depend on how the parties frame their arguments. *Napier*, 137 at 891–92 ("We do caution that *McDonnell Douglas* may have limited value as a heuristic when a plaintiff has not taken that approach to presenting his case."). Yet regardless of which analysis a court uses, "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find

prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

Here, the Court finds it is helpful to use the *McDonell Douglas* approach because the parties have framed their analysis in those terms. (ECF 45 at 19; 55 at 20). *See Napier* at 892. Under *McDonell Douglas*, the plaintiff has an initial burden to produce evidence that indicates a prima facie case for discrimination. *See Simpson v. Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015). If the plaintiff meets this burden, the defendant must provide evidence of a nondiscriminatory reason for the action. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). The burden then shifts back to the plaintiff, who must show that this reason was pretextual. *See id.*

In order to show a prima facie case for discrimination under *McDonnell Douglas*, the plaintiff must produce evidence that: (1) he was a member of a protected class, (2), he was meeting defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) a similarly situated employee outside the protected class was treated more favorably. *See Igasaki*, 988 F.3d at 958 (citing *McDonnell Douglas*, 411 U.S. 792). At the prima facie stage, the plaintiff's prima facie burden is "not onerous" — it is one of production, not persuasion. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). *See also Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (noting that on summary judgment, "the plaintiff must first meet his burden of production on the familiar four-part test for establishing a prima facie case); *Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992) ("While we view the facts in the light most favorable to

the nonmoving party, there is an affirmative burden of production on the nonmoving party to defeat a proper summary judgment motion."). If the plaintiff makes a prima facie case, the defendant may rebut the inference of discrimination by showing that its employment decision was nonetheless nondiscriminatory and neutral. *See Igasaki*, 988 F.3d at 957.

### 1. Legitimate Expectations and Disciplinary Process

Prior to Mr. Hovermale's most recent employment with Norfolk Southern, he had been previously terminated for failing a drug test. (ECF 52 at 5). He was re-hired on January 19, 2023, and began working on January 25, 2023. (*Id.* ¶¶ 52–53). A little over one month later he stopped responding to calls for work. (*Id.* ¶¶ 56–57). Mr. Hovermale's last shift worked was on February 26, 2023. (*Id.* ¶ 56). On March 3, 4, 5, and 6, he did not answer calls to report to work and did not call in sick or make any statements to any Norfolk Southern supervisors to explain this. (*Id.* ¶ 57). On March 6, 2023, Mr. Hovermale's supervisor Terminal Superintendent Wilson texted him and asked him to call back. (*Id.* ¶ 61). Mr. Hovermale did not respond. (*Id.* ¶ 62). Mr. Hovermale also failed to respond to texts on March 1, 5, and 6 from his union representative, including a final text stating that "they're going to pull you out if you don't check in." (*Id.* ¶¶ 58–60). It was only after these repeated failed calls that Supervisor Wilson directed Norfolk Southern Headquarters in Atlanta to send Mr. Hovermale a letter instructing him to "markup" for service within 10 days. (*Id.* ¶ 65).[2]

---

[2] Though Defendants provide evidence that the letter was mailed, Mr. Hovermale disputes whether this letter was actually delivered to him. (ECF 55 at 6). But the only relevant question is whether he had received it from the *employer's* perspective. *Graber*, F. Supp. 2d at 785. Neither Mr. Hovermale nor his representation ever stated that he had not received this letter at the time of his final hearing. (ECF 45-24).

Mr. Hovermale was sent a Charge Letter on March 20, 2023 advising him that he was being investigated and faced potential discipline for his absences. (*Id.* ¶ 71). The Investigation was referred to a Hearing Officer from a different geographic area (Toledo, OH) who had no connection or prior knowledge of Mr. Hovermale or any of the other individuals related to the suit. (*Id.* ¶ 92). Mr. Hovermale was represented by a union officer at the hearing. He initially entered the building, but then, after stating "I'm not going to do this," he walked back to his truck and left. (ECF 45-24 at 17).

The Hearing Officer made the final decision to terminate Mr. Hovermale on May 3, 2023, based on the evidence of Mr. Hovermale's absences and failure to follow instructions. (ECF 45-36 at 2). There is no evidence that the Hearing Officer had any knowledge of the Video, Mr. Hovermale's sexuality, or any of the alleged harassment. In fact, an earlier hearing officer had recused himself after becoming aware of Mr. Hovermale's harassment allegations through a supervisor's request for advice. (ECF 45-24 at 2). These issues were not brought up or discussed during the final hearing. (ECF 45-24).

After this determination, Mr. Hovermale made another appeal to a neutral arbitrator, the Special Board of Adjustment ("Board"). (ECF 45-39). On November 24, 2024, the Board determined that "evidence supports [Mr. Hovermale's] guilt regarding the charged misconduct," but decided to "reduce the Claimant's dismissal to an unpaid suspension" due to "mitigating circumstances." (ECF 45-13 at 3). On January 21, 2025, Supervisor Wilson sent Mr. Hovermale the process for returning to work. (ECF 52 ¶ 159). Yet Mr. Hovermale never submitted his return-to-work forms, despite repeated

12

requests by several Norfolk Southern supervisors. (*Id.* ¶¶ 162–65). Thus, not only was Mr. Hovermale's initial employment decision made by a neutral arbiter, but the decision was then affirmed by another authority in arbitration.  There is ample evidence of Mr. Hovermale's failure to follow work policy, and that Norfolk Southern enforced its policy in a fair and neutral manner.

### 2.      Similarly Situated

Nor can Mr. Hovermale show other similarly situated employees who were treated differently. In order to show that another employee is similarly situated, "a plaintiff must show that there is someone who is comparable to [him] in all material respects." *Durkin v. City of Chi.,* 341 F.3d 606, 613 (7th Cir. 2003) (citing *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002)). Mr. Hovermale cites a statement by his union representative that none of the recent six "missed calls" the representative had personally handled in 2025 had resulted in termination. (ECF 55 at 6). But even setting aside that this time span is after his termination, Mr. Hovermale does not provide any material details about these employees. *See Durkin* 341 F.3d at 613. He does not provide their names or roles. He does not say whether they were in his protected class. Nor does he disclose their employment situation or the context of their termination. Here, Mr. Hovermale had been re-hired for slightly over a month after a for-cause drug-related termination, had received previous discipline for drug use, and had failed to respond to four calls to report for work and one official notice from company headquarters. (ECF 52 ¶¶ 52–71). He was terminated after an investigation hearing by a neutral arbiter, whose opinion was then confirmed by yet another neutral arbiter. (*Id.* ¶ 92). He

provides no evidence that the other six "missed call" employees shared any of these attributes. Thus, he has failed to show other comparable similarly situated employees who were treated differently than him.

Mr. Hovermale also asserts that Norfolk Southern had a multi-step "START" policy, which advised different levels of response to subsequent levels of employee work violations. (ECF 55 at 3). He alleges that Norfolk Southern did not follow this policy with regard to himself. But there are myriad problems with this argument. First, Mr. Hovermale's only support for the policy's contents is an email containing a description of the policy. (ECF 53-6). But there is no authentication or confirmation that this was the actual policy in effect at the time of his termination. *See Officer v. Chase Ins. Life & Annuity Co.*, 478 F. Supp. 2d 1069, 1073 (N.D. Ind. 2007), *aff'd,* 541 F.3d 713 (7th Cir. 2008).

Second, Mr. Hovermale does not provide any details, testimony, or explanation for how the policy was misapplied against him. The email lists a progressive set of responses to violations. But Mr. Hovermale does not explain where he was supposed to fit into this policy. He provides no evidence of how his multiple failures to respond to calls are factored into the analysis, nor does he explain how his previous employment history would have affected the scheme. He does not explain how the scheme was implemented by supervisors, or even whether it was supposed to apply after Norfolk Southern initiated an investigation. And last, he provides no other comparative applications of the policy to other employees.

14

Thus, it would only be speculation to find that Norfolk Southern violated its policies specifically with regards to Mr. Hovermale. *See Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006) ("when the evidence provides for only speculation or guessing, summary judgment is appropriate"). And even if it did, Norfolk Southern properly rebuts any inference of discrimination by showing that his final employment determination was confirmed by multiple neutral arbiters who had no knowledge of Mr. Hovermale's protected characteristics. (*Id.* ¶¶ 90–94). *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 725 (7th Cir. 2005).

### 3. Employer Knowledge

Finally, as a threshold to making a Title VII employment discrimination claim, Mr. Hovermale must show that Norfolk Southern knew he was part of a protected class. *See Bush v. Lakeside Bldg. Maint., Inc.*, No. 04 C 5716, 2007 WL 9815941, at *2 (N.D. Ill. June 15, 2007) (plaintiff "cannot establish a prima facie case of discrimination when the employer lacks any knowledge of a plaintiff's membership in a protected class." (citing *Reed v. The Great Lakes Co.*, 330 F.3d 931, 934 (7th Cir. 2003))). But as discussed above, there is no evidence that Norfolk Southern had any knowledge of Mr. Hovermale's bisexual status until he made his initial complaint on April 17th, twenty-eight days after Norfolk Southern had sent a letter notifying him that he faced potential discipline for his absences. *See supra* page 6. And there is no evidence that the hearing officer who made Mr. Hovermale's final employment decision had any knowledge of Mr. Hovermale's bisexual status. *See supra* pages 12–13.

Mr. Hovermale cannot make a prima facie case because he cannot show either that his job performance met Norfolk Southern's legitimate expectations or that another similarly situated employee who was not in the protected class was treated more favorably. Even if he did, Norfolk Southern rebuts an inference of discrimination by showing that Mr. Hovermale's final employment determination was made after full review by a neutral arbiter who had no knowledge of Mr. Hovermale's protected characteristics. Thus, he cannot show pretext. And finally, Mr. Hovermale's claim fails on the independent ground that he cannot show Norfolk Southern was aware of his membership in a protected class.

He has not shown evidence that, "considered as a whole," would allow a jury to find "an overall likelihood of discrimination." *Ortiz*, 834 F.3d at 763–65. No "reasonable factfinder could conclude that [plaintiff's] protected characteristic caused an adverse employment action." *Napier*, 137 F.4th at 892 (quoting *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022)). Mr. Hovermale has not raised any genuine dispute of material fact as to whether his termination was discriminatory, and judgment on that claim is proper as a matter of law. *See Anderson* 477 U.S. at 248.

## III.   Retaliation

Mr. Hovermale also alleges that his employment termination was in retaliation for his report of workplace harassment. To allege Title VII retaliatory discharge, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered adverse employment actions, and (3) there was a causal connection between the protected

activity and the adverse employment actions. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). Mr. Hovermale's claim fails on the causation element.

First, as discussed, he made his initial allegations of harassment weeks after Norfolk Southern began their disciplinary action. *See supra* page 6. Second, there is no evidence that any of the relevant decisionmakers had any knowledge of Mr. Hovermale's harassment claims. *See supra* pages 12–13. And finally, by showing that Mr. Hovermale's employment termination was made upon review by a final and neutral decisionmaker, Norfolk Southern rebuts any inference of improper motivation. *See Brewer v. Bd. of Trs. of Univ. of Ill.*, 407 F. Supp. 2d 946, 977 (C.D. Ill. 2005) (citing *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 643–44 (7th Cir. 2002)), *aff'd sub nom. Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908 (7th Cir. 2007).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. (ECF 44). Plaintiff's claims are **DISMISSED**. The Clerk is **DIRECTED** to close the case.

SO ORDERED on May 11, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

17